UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHEN JAMAL DALE,

                Plaintiff,

v.                                           Case No. 2:20-cv-521-NPM

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

## OPINION AND ORDER

Plaintiff Stephen Jamal Dale seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 16),[1] and the parties filed a joint memorandum (Doc. 30). As discussed below, the decision of the Commissioner is affirmed.

## I.    Eligibility for Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

_____

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.   Factual and procedural history

On March 9, 2018, Dale applied for disability insurance benefits and supplemental security income benefits. (Tr. 107-108, 220, 224). He asserted an onset date of March 1, 2018, alleging disability due to spinal impairments and radiating pain. (Tr. 218-233, 244, 263). As of his alleged onset date, Dale was 31 years old with some college education. (Tr. 109, 123, 245). Dale previously worked as a warehouse worker, forklift operator, and loader/unloader. (Tr. 22, 245).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

Dale's application was administratively denied initially on July 10, 2018, and upon reconsideration on September 7, 2018. (Tr. 107-108, 137-138). At Dale's request, Administrative Law Judge ("ALJ") Eric Anschuetz held a hearing on September 12, 2019. (Tr. 30-86, 165). The ALJ issued an unfavorable decision on October 28, 2019, finding Dale not disabled from March 1, 2018, through the date of the decision. (Tr. 12-24).

Dale's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Dale then brought the matter to this court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 18).

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233,

1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one, the ALJ found Dale had not engaged in substantial gainful activity since March 1, 2018, the alleged onset date. (Tr. 17). At step two, the ALJ characterized Dale's severe impairment as degenerative disc disease of the lumbar spine. (Tr. 17). At step three, the ALJ determined Dale did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18-19).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) where he can lift and/or carry twenty pounds occasionally and ten pounds frequently. He can stand and/or walk four hours in an eight-hour workday. He can sit for six hours in an eight-hour workday. He can never climb ladders and scaffolds. He can frequently climb ramps and stairs. He can frequently balance and stoop. He can occasionally kneel, crouch, and crawl. He can occasionally reach overhead with his right upper extremity. He should avoid concentrated exposure to environmental extremes of heat and cold. He should avoid concentrated exposure to workplace hazards such as unprotected heights and unshielded rotating machinery. He must be permitted to alternate sitting and standing at thirty-minute intervals.

(Tr. 19). Consequently, at step four, the ALJ determined Dale was not capable of performing his past relevant work. (Tr. 22). At step five, the ALJ found Dale could perform other work that exists in significant numbers in the national economy. In support, a vocational expert opined during the ALJ hearing that three occupations represent the kinds of jobs that an individual with Dale's age, education, work experience, and RFC could perform:

- Cashier (DOT #211.462-010, light, SVP 2, unskilled, with 500,000 jobs in the national economy);

- Routing Clerk (DOT #222.687-022, light, SVP 2, unskilled, with 94,000 jobs in the national economy); and

- Toll Collector (DOT #211.462-038, light, SVP 2, unskilled, with 17,000 jobs in the national economy).

(Tr. 23).[5] Consequently, the ALJ concluded Dale was not disabled for purposes of the Social Security Act.

---

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## II.   Analysis

Dale's appeal presents the following issues for review:

(1)   whether the ALJ adequately considered MRI-related evidence; and

(2)   whether the ALJ properly considered Dale's subjective allegations.

(Doc. 30, pp. 20, 28).

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words,

a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

## B.    Whether the ALJ adequately considered MRI-related evidence

Dale claims the ALJ failed to discuss or even identify his lumbar spine MRI from March 28, 2018 (*see* Tr. 370-371, 400-401, 406-407, 460-461), and failed to consider his neurologist—Jamie Alvarez, M.D.'s—resulting surgical recommendation, which was based on the MRI (*see* Tr. 434). (Doc. 30, p. 21).

As for the MRI, Dale misreads the ALJ's decision. The ALJ found degenerative disc disease of the lumbar spine as Dale's severe impairment. (Tr. 17). And while the ALJ did not explicitly discuss the MRI, he relied on and cited it as evidence of Dale's severe impairment. (*See* Tr. 20 ("The claimant has been diagnosed with degenerative disc disease of the lumbar spine (Exhibit 10F, p. 5)"). This fact distinguishes this case from *Brazie v. Comm'r of Soc. Sec.*, No. 3:14-cv-937-J-DNF, 2015 WL 5559775 (M.D. Fla. Sept. 21, 2015), which Dale argues is "almost identical." (Doc. 30, pp. 21-22). In *Brazie*, the ALJ failed to mention

8

important medical evidence, in particular a lumbar spine MRI, nerve conduction test, and a sensory examination. And that failure was compounded by the fact that the ALJ afforded "great weight" (under the prior regulations) to certain opinions offered before the plaintiff underwent significant objective testing. Since the ALJ did not sufficiently address the objective medical evidence, the *Brazie* court reversed. *Id.* at *5-6. But here, the ALJ not only considered Dale's MRI but expressly relied on it in support of his step-two finding.

Moreover, Dale's related contention that the ALJ ignored Dr. Alvarez's "opinion" is also without merit. On April 18, 2018, Dale attended a neurosurgical consultation with Alvarez. Alvarez reviewed Dale's complaints of symptoms, including pain aggravated by increased activity, standing, walking, prolonged sitting, stair-climbing, driving, lifting, and twisting. Dale described numbness and tingling in his right leg and explained that it felt "weak at times." Alvarez reviewed the lumbar spine MRI and noted that it demonstrated "a large central/right paracentral L4-5 disc herniation with large free fragment compressing the right L5 nerve root and cauda equina." (Tr. 432). Review of symptoms was positive for chronic back pain, joint swelling, muscle pain, and muscle weakness. Neurologically, Dale was noted as having dizziness, poor balance, the sensation of the room spinning, tingling, and weakness. (Tr. 433). Alvarez prescribed Tizanidine and Zanaflex and referred Dale to physical therapy. Alvarez wanted Dale to return

for a follow up in five weeks and noted that, if Dale's symptoms did not improve after the twelve prescribed physical therapy visits, he would recommend surgery consisting of a right L4-5 discectomy procedure. (Tr. 434).

On May 23, 2018, Dale followed up with Alvarez. Alvarez noted that physical therapy had not been beneficial. So Alvarez recommended Dale undergo surgery to address the lumbar radiculopathy and herniated nucleus pulposus L4-5. (Tr. 423-424, 445-446). However, Dale indicated during a June 4, 2018, visit that he wanted to explore non-surgical options as well as decrease or eliminate his reliance on his prescribed narcotic medications. A different doctor, James P. Weiner, M.D., from the neurosurgery office, indicated that Dale qualified for a medical marijuana certification. (Tr. 442-444).

The ALJ was not required to expressly assess Alvarez's surgery recommendation because it was not a "medical opinion" under the new regulations. For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work or adapt to work-related conditions. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Furthermore, medical opinions related to claims

filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 416.920c, 416.927(c), 404.1520c, 404.1527(c). Alvarez's note recommending surgery is not a medical opinion because it is not a judgment about Dale's capabilities in a work setting. What's more, Dale did not pursue surgery even after Alvarez recommended it. Thus, there is no error.[6]

### C.     Whether the ALJ properly considered Dale's subjective allegations

Dale suggests the ALJ did not give proper consideration to his subjective allegations and improperly discounted them by using selective, partial, and mischaracterized references to the record.

When assessing a claimant's RFC, an ALJ must consider all relevant evidence in the case and all a claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. §§ 404.1513(a), 416.913(a). Relevant evidence includes a claimant's statements of symptoms. When considering a claimant's subjective complaints, an ALJ must follow a two-step process. 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 16-3p, 2017 WL 5180304, *3-4 (Oct. 25, 2017).

First, the claimant must provide evidence of an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to

---

[6] For these reasons, Dale's subsequent argument repeating that the ALJ failed to consider the MRI is without merit. (Doc. 30, pp. 29-30).

produce the claimant's symptoms, such as pain. Second, the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304 at *3-4.

If the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if, and to what extent, the claimant's symptoms limit his ability to do work-related activities. This includes a claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3), 416.929(c), 416.945(a)(3); *see also* SSR 16-3p, 2017 WL 5180304 at *7-8.

"Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Thus, the issue on appeal is

"not whether the ALJ could have reasonably credited [Dale's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (cleaned up). Dale challenges several aspects of the ALJ's analysis of the subjective complaints as inconsistent with the evidence. But these challenges lack merit.

### 1. Whether the ALJ mischaracterized Dale's treatment as conservative

Dale claims the ALJ mischaracterized the treatment for lumbar degenerative disc disease as "conservative" and improperly concluded that the related "back pain is not as severe as alleged." (Tr. 21). He argues this characterization is at odds with Dr. Alvarez's May 23, 2018, neurological treatment record, which notes that physical therapy failed and recommends surgery to address Dale's lumbar radiculopathy and herniated nucleus pulposus at L4-5. (Doc. 30, p. 31 (citing Tr. 423-424, 445-446)).

But the ALJ characterized Dale's treatment as conservative for multiple reasons. The ALJ reasoned that there was no evidence that Dale received a steroid injection or underwent a surgical procedure since the alleged onset date. While surgery was eventually recommended after Dale did not complete his physical therapy, Dale actually declined surgery and opted to obtain a medical marijuana card instead. (Tr. 64-65, 442). And while Dale attended physical therapy, he only attended seven out of the twelve prescribed sessions. Dale testified that physical

therapy "was making [his condition] worse" and that he did not feel like he was healing. (Tr. 38, 42, 445). Nonetheless, Dale was managing well with his medical marijuana prescription and narcotic medication. (Tr. 20-21, 513). So, substantial evidence supports the ALJ's assessment of Dale's treatment as conservative. (Tr. 21; *see also* Tr. 484, 486, 502).

## 2. Whether the ALJ mischaracterized the objective evidence

While Dale claims the ALJ "cherry-picked" a single record to justify a conclusion that Dale's symptoms were not consistent with the record, this is not so. Rather, Dale has cherry-picked portions of the ALJ decision to his own benefit. (Doc. 30, p. 33). The ALJ found that degenerative disc disease was an underlying impairment, but that Dale's complaints about the limiting effects of this impairment were not consistent with the objective medical evidence in the record. The ALJ explained, in relevant part:

> The examination notes do not support the reported severity of the claimant's lumbar degenerative disc disease. Although his examiners occasionally note an antalgic gait (*See, e.g.*, Exhibit 8F, p.2, 8) and decreased range of motion throughout his lumbar spine (*See, e.g.*, Exhibit 11F, p.18, 20), these findings are not consistent throughout the record (*See, e.g.*, Exhibit 11F, p.26). There is no evidence that he uses a cane or other assistive device to ambulate. Moreover, straight leg raise testing returns negative (*See, e.g.*, Exhibits 3F, p.l; 8F, p.11; 11F, p.7, 26; 12F, p.5). Although he reports constant pain, he generally presents to medical examinations in no apparent distress (*See, e.g.*, Exhibits 2F, p.5; 10F, p.10, 12; 11F, p.7, 10; 12F, p.5).
>
> The examination notes do not support the reported severity of the claimant's radicular pain. While he reports radicular pain throughout his right lower extremity, there is generally no evidence of focal or motor deficits (*See, e.g.*, Exhibit 3F, p. l). For example, he retains 5/5 strength and normal muscle tone

throughout his right lower extremity *(See, e.g.,* Exhibits 10F, p.10; 11F, p.13, 26). He also retains full range of motion throughout his right lower extremity (*See, e.g.*, Exhibit 11F, p.13, 26). While there is some evidence of hyperesthesia upon pinprick and light touch, it is described as "slight" (Exhibit 11 F, p.26). Moreover, this finding is not consistent throughout the record. He generally displays intact sensation throughout his right lower extremity (*See, e.g.*, Exhibit 11F, p.7, 10).

(Tr. 20).[7]

Dale advances three attacks on the ALJ's analysis. First, he argues the ALJ mischaracterized the evidence as inconsistent because the ALJ cited to a single record to discredit findings of decreased range of motion and antalgic gate. And, according to Dale, even that record provided evidence consistent with Dale's claim of disability. (Doc. 30, p. 33). Second, Dale claims the ALJ misconstrued a reference to "apparent distress" because the remainder of the treatment note records a list of symptoms and his physical examination showed "diffuse tenderness to palpation of the lumbar spine." (Doc. 30, pp. 37-38; Tr. 513-514) And third, Dale argues the ALJ made unsupported lay interpretations of other findings.

While the ALJ cited to one example where the treatment notes did not indicate antalgic gait or decreased range of motion (citing Tr. 448, 494 (April 18, 2018)), he need not cite every instance of this, and Dale provides no authority for his proposition. Plus, elsewhere in the decision, the ALJ cited other records noting full and normal range of motion without pain. (Tr. 18, 20 (citing Tr. 331, 465, 481, 494);

---

[7] The ALJ also found the examination notes did not support the severity of Dale's radicular pain. (Tr. 20). But since Dale does not take issue with this analysis, the court need not address it.

*see, e.g.*, Tr. 114, 332). Moreover, the ALJ did not rely solely on an April 18, 2018, treatment note as Dale suggests—it was one piece of evidence the ALJ used to reach his conclusions. For example, the ALJ also noted there was no evidence Dale used an ambulatory device, and he had several negative straight-leg-raise tests. (Tr. 20).

Dale next argues the ALJ discredited the subjective allegations by relying on isolated references of no apparent distress. (Doc. 30, p. 36 (citing Tr. 20, 331, 465, 467, 475, 478, 514)). But the records cited by the ALJ expressly state no distress, so Dale's contention is patently false given the plain language of the treatment notes. (Tr. 331 ("no distress"), 465 ("no apparent acute or chronic distress"), 467 ("no apparent acute or chronic distress"), 475 ("no acute distress"), 478 ("no acute distress"), 514 ("no acute distress")). It appears Dale's implicit contention is that his medical providers mischaracterized his condition—an issue that is a non-starter.

And Dale's third contention that the ALJ "does not possess the medical expertise to determine which examination findings are accurate indicators for assessing the validity of pain-related complaints" is likewise unfounded. (Doc. 30, p. 39). When medical evidence supports a claimant's subjective complaints of pain, an ALJ cannot disregard that medical evidence and substitute his own opinion for that of medical experts. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). But the ALJ has the sole responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482

F. App'x 483, 486 (11th Cir. 2012) (stating "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). Therefore, an ALJ does not assume the role of a doctor by sorting through the conflicting evidence and making an RFC assessment. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."); *see also Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007) (holding the ALJ did not substitute his judgment for the doctor; he found the opinion inconsistent with the record evidence and accordingly assessed the RFC based on the record).

The ALJ observed that Dale did not require ambulatory assistance or other therapeutics. Admittedly, no treating or examining source suggested that the absence of such findings undermined Dale's pain complaints and related limitations. But state agency consultants—who are highly qualified specialists and experts in the Social Security disability programs—opined that Dale retained the ability to perform at least light work[8] with postural, environmental, and manipulative limitations. (Tr. 21, 92-94, 130-135). And it is not error for an ALJ to observe the lack of objective

---

[8] The initial disability consultant, Andrew Scanameo, M.D., opined Dale could perform medium work (Tr. 95), but the reconsideration consultant, Minal Krishnamurthy, M.D., opined Dale could perform light work (Tr. 105). The ALJ limited Dale's RFC to light work. (Tr. 19, 21).

evidence supporting a claimant's allegations of disability. *See, e.g.*, *Gregory v. Comm'r of Soc. Sec.*, No. 8:16-cv-1471-T-36AEP, 2017 WL 4325397, \*5 (M.D. Fla. Sept. 29, 2017) (finding no error where ALJ highlighted lack of treatment and objective findings supporting plaintiff's subjective complaints).

### 3. *Whether the ALJ mischaracterized Dale's activities of daily living*

Finally, Dale claims the ALJ mischaracterized his activities of daily living. (Doc. 30, p. 40). The ALJ pointed to three activities as contradicting the alleged severity of Dale's lumbar degenerative disc disease: (1) Dale "takes his children to and from school every day;" (2) Dale "lives with his grandmother, who he makes sure stays adherent to her prescribed medical regimen;" and (3) Dale "looks for full-time and part-time jobs throughout a typical day." (Tr. 21). The ALJ concluded that "[t]hroughout the record, [Dale] has described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 21).

While Dale seeks to qualify his testimony concerning the above statements, it does not change the fact that the ALJ's characterization is not inaccurate. He did testify to those activities. (*See* Tr. 47-51, 72). Furthermore, Dale's daily activities are not the only basis for the RFC or for the ALJ's determination of no disability, which was otherwise based on objective medical records.

For support, Dale relies on *Tumlin v. Commissioner of Social Security*, No. 2:19-cv-00457-JLB-NPM, 2021 WL 1214880, *30 n.17 (M.D. Fla. Mar. 31, 2021). However, this case is inapposite for several reasons. In *Tumlin*, the overall medical evidence pointed to a much more debilitating condition, and the ALJ incorrectly summarized a mental status evaluation with significant indicators of mental impairment as "entirely normal psychiatric findings." *Id.* at *9-10. Here, while there are indications that Dale had an impairment, the overall medical evidence established that his pain was managed with medication and was not as debilitating as alleged when he presented at appointments. (Tr. 18). Furthermore, in *Tumlin*, the ALJ relied on a state psychologist's assessment, which was made before a physician assessed severe impairments, which reflected a significant worsening of the claimant's condition. *Id.* at *14-15. Here, two state agency medical consultants (Drs. Scanameo and Krishnamurthy) reviewed the treatment records, including the most recent MRI (*see e.g.*, Tr. 94, 104, 114-115, 117, 119-120)), and relied on those records in developing their opinions.

The ALJ, in turn, relied on these opinions to support an RFC that Dale could perform light work with appropriate limitations. (Tr. 121, 135). Both consultants concluded that Dale could perform light work; indeed, Dr. Scanameo assessed that Dale was still capable of medium work. (Tr. 95, 105). Dale has not challenged the ALJ's treatment of the agency opinions. And the ALJ's RFC of light work with

functional limitations was reasonable. In short, substantial evidence supports the ALJ's finding, and the court may not re-weigh the evidence as Dale seeks. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021).

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The **CLERK OF COURT** is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 29, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

20